Michael **HALLMARK**, on behalf of himself and all others similarly situated, Plaintiff,

v.

**COHEN & SLAMOWITZ**, Midland Funding LLC, Defendants.

No. 11–CV–842S(F).

United States District Court, W.D. New York.

Signed April 28, 2015.

---

Bromberg Law Office, P.C., Brian L. Bromberg, Jonathan R. Miller, of Counsel, New York, NY, Law Offices of Kenneth Hiller, PPLC, Seth Andrews, of Counsel, Amherst, NY, for Plaintiff.

Connell Foley LLP, Andrew C. Sayles, of Counsel, Roseland, NJ, for Defendant Cohen & Slamowitz, LLP.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Thomas A. Leghorn, of Counsel, New York, NY, for Defendant Midland Funding, LLC.

## DECISION and ORDER

LESLIE G. FOSCHIO, United States Magistrate Judge.

In this class action, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA") seek damages for Defendants' unauthorized attempt to collect pre-suit filing fees of $140 for which Defendant Cohen & Slamowitz ("C & S") demanded payment by letter sent prior to the filing of any complaint.

By motion papers filed October 2, 2014 (Doc. No. 230) ("Plaintiff's motion"), Plaintiff requested, *inter alia*, Defendants produce all credit card agreements and related documents which Defendants assert authorize Defendants to collect such fees from the 10,250 class members permitted under FDCPA § 1692f(1). Defendants opposed Plaintiff's motion claiming that the requested production would impose a prohibitively expensive compliance cost of "at least $300,000," Affidavit of Kyle Hannan (Doc. No. 239), and thus was unduly burdensome. In this estimate, Defendant Midland ("Midland") stated that it would be required to obtain records for 3,200 class members from the original creditors as Midland did not already possess such records but could obtain them at a cost of $10 per credit cardholder or $32,000, plus Midland's other costs related to such request. *Id.* ¶¶ 9–11. As to the balance, *i.e.*, 7,050,[1] of the class, Midland stated that because of the manner in which the relevant "cardholder agreements are stored in Midland's databases," Midland would be required to manually review each account file to locate agreements responsive to Plaintiff's request for 4,600 (actually 4,850) of the class members. *Id.* ¶ 12. According to Midland, the cost of such review and production for the responsive cardholder agreements from this group of class account files would be approximately $300,000 excluding the related documents, such as assignments, that were also subject to Plaintiff's motion. *Id.* ¶ 13.

In a Decision and Order filed January 8, 2015 (Doc. No. 254) ("the Jan. 8, 2015 D & O" or "the D & O"), the court directed Defendants produce responsive documents limited

---

1. Incorrectly stated in the Jan. 8, 2015 D & O as 6,800. Jan. 8, 2015 D & O at 10.

to a random 10% sample of the cardholder files for 7,050 class members, excluding the 3,200 class member account files which Midland averred it did not presently hold in its possession, thereby relieving Midland of $32,000 in acquisition fees to obtain such records and reducing Midland's production costs to less than 10% of its estimate of $300,000. Jan. 8, 2015 D & O at 9–10.

By papers filed January 22, 2015 (Doc. No. 255), Midland filed an "Objection" to the Jan. 8, 2015 D & O ("Midland Objection" or "the Objection") in which Midland stated that of the 7,050 class member accounts from which the court directed the 10% random sample to be drawn, 2,200 accounts were "readily accessible," Midland Objection at 1, for such production without "undue burden to Midland." Midland's Objection accordingly requested the court modify the D & O to limit production to 680 (10% of 6,800) as a sample of class members' credit card agreements containing the contract authorization clause Defendants assert support Defendants' authorization 'defense' (more correctly 10% of 7,050 or 705 accounts) applied to the 2,200 more accessible accounts to avoid approximately $25,000 in costs, that Midland claims would be incurred upon Midland's review of the remaining portion, 4,750, of the relevant account files representing the balance of cardholder agreement files for the class. Midland's Objection at 1. Midland further states that applying the court's 10% sampling process, which Midland characterized as "a reasonable balance of the competing interests in [Plaintiff's] motion to compel," Midland Objection at 1, to the 4,750 accounts "would require a massive, and unnecessary burden." *Id.* Based on these representations of undue burdensomeness, the Objection requested that the D & O be "modified" to require the "680 [705][2] agreements," required to satisfy the 10% random sample directed by the court, and be drawn at no cost to Midland from the "more" readily accessible 2,200 class members' accounts. *Id.* at 2. By papers filed January 22, 2015 (Doc. No. 256) Defendant C & S "join[ed]" in Midland's Objection to the January 8, 2015 Order of the Hon. Leslie G. Foschio." C & S's Objection at 1.

In opposition to Defendants' Objections, Plaintiff filed, on February 5, 2015, the Declaration of Jonathan R. Miller (Doc. No. 259) ("Miller Declaration") together with Exhibits A–C ("Miller Declaration Exh(s). ——") and Plaintiff's Memorandum of Law In Opposition (Doc. No. 258) ("Plaintiff's Memorandum"). On April 9, 2015, Midland filed Midland Funding LLC's Reply in Support of Its Objection to the January 8, 2015 D & O ("Midland Reply"). On April 8, 2015, Defendant C & S advised the court by e-mail that it did not intend to file any reply.

Upon a preliminary review of Midland's objection and finding the Objection appeared to be addressed to the undersigned rather than the district judge ("Midland recognized the Court's consideration of the burden imposed by Your Honor's January 8, 2015 Order . . . [and] respectfully requests a partial modification of this Court's Order dated January 8, 2015."), Midland Objection at 1, and given that the Objection does not purport to assert the January 8, 2015 D & O was "clearly erroneous or contrary to law," 26 U.S.C. § 636(b)(1)(A) (district "judge may reconsider any pretrial matter under this paragraph (A) where . . . the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R.Civ.P. 72(a) ("district judge must . . . modify or set aside any part of the [magistrate judge's] order [to which objections were timely filed] that is "clearly erroneous or is contrary to law."), District Judge Wolford, to whom the case was recently re-assigned, Doc. No. 257, requested the undersigned consider the Objection as a motion for reconsideration. In accordance with Judge Wolford's request, the court addresses Defendants' Objection as a motion for reconsideration of the Jan. 8, 2015 D & O. Oral argument was deemed unnecessary.

 It is well established that reconsideration is limited to circumstances where the court has overlooked factual matters or controlling precedent with respect to the issues upon which the court previously ruled. *See Larouche v. Webster,* 975 F.Supp. 490, 492 (S.D.N.Y.1996) (citing caselaw). Here, Defendants do not assert the Jan. 8, 2015 D &

2. Unless indicated otherwise all bracketed material added.

O overlooked any controlling precedent with respect to Defendants' objections. *See* Midland Objection (*passim*); Midland Reply (*passim*). Nor does Midland point to any factual matter the court may have misstated. *Id.* Specifically, although Midland represented that an intensive review of 4,600 (4,850) class member cardholder agreement files, involving, according to Midland, 37,000 agreements, would be required to produce agreements and related documents responsive to Plaintiff's request, Kyle Affidavit ¶ 12, Midland did not specifically suggest that any production the court may direct, whether by review of all such files, or by sampling, be limited to the 2,200 cardholder files, as Midland, in the Objection, now requests. This is reinforced by Midland's more detailed explanation, provided in Midland's Reply, that the estimated costs for reviewing and producing responsive cardholder agreements for the 4,600 (4,850) files is approximately $25,000. Midland Reply at 2. Midland also asserts that drawing from a 10% sample of 705 files from the 2,200 digitized files, as Midland proposes, would not prejudice Plaintiff insofar as the randomness of the sample is concerned because, according to Midland, "the pool of 2,200 accounts is totally random." Midland Objection at 1. Therefore, according to Midland, sampling this subgroup of the files of class member cardholder accounts to produce a random sample of 705 cardholder agreements would "satisfy[y] the intent" of the Jan. 8, 2015 D & O. Midland Objection at 1.

Plaintiff opposes Midland's request contending that (1) the Objection fails to comply with Local R.Civ.P. 72(c) which requires an objection certify that no legal or factual arguments not previously raised by the objecting party before the magistrate judge are presented, Plaintiff's Memorandum at 2, (2) the Objection does not assert that Jan. 8, 2015 D & O is in any respect clearly erroneous or contrary to law as required by § 636(a)(1)(A) and Rule 72(a), *id.,* and (3) permitting Midland to produce the required sample of cardholder agreements from the sub-group of 2,200, ostensibly more accessible class members' account files, will improperly "skew" the result. Plaintiff's Memorandum at 8–13. Although, in response, Midland asserts that is has adequately explained why the Jan. 8,

2015 D & O is clearly erroneous or contrary to law by pointing to the purported increased costs associated with sampling the 4,600 account files in which numerous documents are located, this argument assumes that it is improper, in discovery, to impose such expense on a responding party. It is not, and neither the Objection nor the Midland Reply point to any authority to support this theory.

■ Although in general "requests [to produce documents] that require extensive ... evaluation may be objectionable.. and a responding party is not required to prepare the adverse party's case ...[,] [t]he reasonableness of a request is within the court's discretion." Baicker–McKee Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK, Thomson Reuters 2015 at 911–12 (citing *Chambers v. Capital Cities/ABC,* 154 F.R.D. 63, 65 (S.D.N.Y.1994)). Here, several factors undermine Midland's Objection, considered as a motion for reconsideration. First, based on Midland's representation, the difference in the degree of difficulty in reviewing the 4,850 class member account files for responsive cardholder agreements, which support Defendants' authorization defense, in contrast to the alleged greater ease of review and production for Midland associated with applying the 10% sample procedure, as directed by the Jan. 8, 2015 D & O, to the 2,200 files proposed by Midland, arises from the fact that "the remaining 4,600 cardholder agreements are not stored directly with each individual [class member] account." Midland Reply at 2 ("2,200 of these [relevant] agreements are stored directly with each individual account file."). However, such contrasting filing and retrieval issues do not require reconsideration. That Midland's document storage system creates the basis upon which Midland relies in requesting the court limit the sampling process to the 2,200 supposedly more accessible files is, in itself, no reason to alter the sampling process required by the D & O. *See Brooks v. Macy's, Inc.,* 2011 WL 1793345, at *4 (S.D.N.Y. May 6, 2011) ("the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents."); *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (D.Mass.1976) ("To allow a defendant whose

business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."). Second, while a producing party such as Midland could elect to "make [the relevant records] available for inspection, copying, testing or sampling," Baicker-McKee, Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK at 904–05 (citing cases), instead of engaging in the actual task of production of the documents, Midland has not elected to do so, most likely because the relevant documents in the 4,850 files are not amenable to this manner of production. Third, the purpose of the Plaintiff's document production request at issue is to force Defendants to produce the cardholder agreements upon which Defendants intend to rely in support of Defendants' affirmative defense, regarding which Defendants have the burden, Jan. 8, 2015 D & O at 4–5 (citing cases), that the C & S collection letter demanding payment of the $140 court filing fee before the actual filing of the complaint against Plaintiff for non-payment, was authorized by Plaintiff's cardholder agreement with Plaintiff's creditor, and the creditors of the class, as permitted by § 1692f(1), in essence, an understandable demand that Defendants 'show their cards,' as presumably Defendants will eventually be required to do on potential motions to decertify, summary judgment, or at trial. Midland's Objection to the court's sampling requirement, which substantially reduced the overall burden of production of such highly relevant documents, therefore fails to point to any legal principle overlooked by the D & O. Last, Midland's Objection, if accepted, will reduce the population of relevant account files for sampling to 2,200 from 7,050 class member account files, or 21.4% from 68.7% of this population. As Plaintiff pointed out, in its effort to balance the Defendants' cost of production against Plaintiff's need for production, the court had excluded from the entire (and, arguably, more statistically correct population for sampling purposes) 10,250 class population, the account files for 3,200 class members which Midland represented would require Midland expend $32,000 to acquire, Jan. 8, 2015 D & O at 9–10, an exclusion "already problematic from a statis-

tical perspective." Plaintiff's Memorandum at 8.

■ In applying sampling as a discovery tool in facilitating production from a large number of documents, courts attempt to assure that the sample is "representative" in relevant respects to the "populations" of the documents to be reviewed. *See Assured Guaranty Municipal Corp. v. Flagstar Bank,* 920 F.Supp.2d 475, 487 (S.D.N.Y.2013) (plaintiff's statistical expert determined random samples, 4% and 8%, respectively, of responsive agreements constituting securitized loan pools were "representative of the total loan population" to support finding of defendant's failure to follow underwriting guidelines, constituted fraud, or misrepresentation in issuing such loans). *See also Sampling Methods Used In Statistical Analysis,* http://www.statisticalforecasting.com/ statistical-sampling-methods.php ("The sample should be representative of the general population."); MANUAL FOR COMPLEX LITIGATION FOURTH at 474 ("Whether the aim is discovery ... any sample should be representative. . . ."). Although Midland represents the 2,200 files from which it requests the 10% sample of 705 files be drawn will be sufficiently representative, Midland Reply at 1 ("providing 680[705] terms and conditions from this random group [2,200] satisfies the intent of Your Honor's order."), Midland provides no affidavit from someone knowledgeable in statistical sampling, supporting that Midland's proposed reduction in the population of class member agreements would not adversely affect the statistical reliability of the resultant document production based on the sample. Moreover, Midland's assertion that the relevant characteristics of the 2,200 account file population sub-group, *e.g.,* age of account, creditor name, debtor name, amount of debt, would not adversely "affect randomness," Midland Objection at 1, is likewise without support in the form of an affidavit based on personal knowledge or statistical expertise. In sum, the Jan. 8, 2015 D & O directions with respect to the use of the 10% sample to be applied to the 7,050 class member account files in Midland's possession in order to comply reasonably with Plaintiff's demand for production of the agreements

and related documents, which Defendants claim support Defendants' authorization defense, requires no reconsideration.

## CONCLUSION

Based on the foregoing, considering, in accordance with Judge Wolford's request, Defendants' Objections (Doc. Nos. 255 and 256) as motions for reconsideration of the Jan. 8, 2015 D & O, such motions are DENIED.

SO ORDERED.